1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10  RUSSELL CLEO CONSTABLE,          )  1:07-cv-995-OWW-SMS
                                    )
11           Plaintiff,             )  FINDINGS AND RECOMMENDATION TO
                                    )  DISMISS PLAINTIFF'S FIRST AMENDED
12                                  )  COMPLAINT WITHOUT LEAVE TO AMEND
        v.                          )  (DOC. 15)
13                                  )
    STATE OF CALIFORNIA, et al.,    )
14                                  )
             Defendants.            )
15                                  )
                                    )
16  _____)

17      Plaintiff is proceeding pro se and in forma pauperis with an

18  action for damages and other relief concerning alleged civil

19  rights violations. The matter has been referred to the Magistrate

20  Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and

21  72-304.

22      Pending before the Court is Plaintiff's first amended

23  complaint (FAC), filed on December 3, 2007.

24      I. Screening the Complaint

25      In cases wherein the plaintiff is proceeding in forma

26  pauperis, the Court is required to screen cases and shall dismiss

27  the case at any time if the Court determines that the allegation

28  of poverty is untrue, or the action or appeal is frivolous or

1

malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. 1915(e)(2).

Fed. R. Civ. P. 8(a) provides:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

A complaint must contain a short and plain statement as required by Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which the defendants engaged in that support Plaintiff's claim. Id. Although a complaint need not outline all elements of a claim, it must be possible to infer from the allegations that all elements exist and that there is entitlement to relief under some viable legal theory. Walker v. South Cent. Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990); Lewis v. ACB Business Service, Inc., 135 F.3d 389, 405-06 (6th Cir. 1998).

In reviewing a complaint under this standard, the Court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the pro se pleadings liberally in the light most

1   favorable to the Plaintiff, <u>Resnick v. Hayes</u>, 213 F.3d 443, 447

2   (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor,

3   <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).

4       If the Court determines that the complaint fails to state a

5   claim, leave to amend should be granted to the extent that the

6   deficiencies of the complaint can be cured by amendment. <u>Lopez v.</u>

7   <u>Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). A

8   complaint, or a portion thereof, should only be dismissed for

9   failure to state a claim upon which relief may be granted if it

10  appears beyond doubt that the Plaintiff can prove no set of

11  facts, consistent with the allegations, in support of the claim

12  or claims that would entitle him to relief. <u>See</u> <u>Hishon v. King &</u>

13  <u>Spalding</u>, 467 U.S. 69, 73 (1984), citing <u>Conley v. Gibson</u>, 355

14  U.S. 41, 45-46 (1957); see also <u>Palmer v. Roosevelt Lake Log</u>

15  <u>Owners' Ass'n., Inc.</u>, 651 F.2d 1289, 1294 (9th Cir. 1981).

16  Dismissal of a pro se complaint for failure to state a claim is

17  proper only where it is obvious that the Plaintiff cannot prevail

18  on the facts that he has alleged and that an opportunity to amend

19  would be futile. <u>Lopez v. Smith</u>, 203 F.3d at 1128.

20      A claim is frivolous if it lacks an arguable basis either in

21  law or fact. <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989). A

22  frivolous claim is based on an inarguable legal conclusion or a

23  fanciful factual allegation. <u>Id.</u> A federal court may dismiss a

24  claim as frivolous if it is based on an indisputably meritless

25  legal theory or if the factual contentions are clearly baseless.

26  <u>Id.</u>

27      The test for malice is a subjective one that requires the

28  Court to determine whether the applicant is proceeding in good

3

faith. <u>Kinney v. Plymouth Rock Squab. Co.</u>, 236 U.S. 43, 46 (1915); <u>see</u> <u>Wright v. Newsome</u>, 795 F.2d 964, 968 n. 1 (11th Cir. 1986). A lack of good faith is most commonly found in repetitive suits filed by plaintiffs who have used the advantage of cost-free filing to file a multiplicity of suits. A complaint may be inferred to be malicious if it suggests an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases, <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1309 (D.C.Cir. 1981); if it threatens violence or contains disrespectful references to the Court, <u>id.</u>; or if it contains untrue material allegations of fact or false statements made with knowledge and an intent to deceive the Court, <u>Horsey v. Asher</u>, 741 F.2d 209, 212 (8th Cir. 1984).

Plaintiff names as defendants the state of California; "C.E.O. Anold Swartzinagger," which the Court understands to be a reference to the governor of California; Stanislaus County; James Brazelton, District Attorney for the County of Stanislaus; Regal Wilson, Chief Executive Officer of the county; Judges Marie S. Silvera, Edward Lacey, Terry Cole, David Vander Wall, and Susan D. Siefkin; individuals described as employees of District 1, including Pat Paul, Thomas W. Mayfield, Nick W. Blom, Ray Simon, and Paul W. Caruso; Ray Harder, described as an officer; Bruce Kirby and Ron Wood, described as court officers; Lisa Constant Dickson, Plaintiff's former wife and the mother of the children in controversy; and attorneys Jeffrey S. Drabin, E. F. Cash Dudley, and Cheryl K. McSparin. (FAC pp. 1-2, 4.)[1] Plaintiff

---

[1] Plaintiff assigned letters of the alphabet to identify the Defendants as well, but the Court finds these references to be unnecessarily burdensome and confusing, and thus will refer to the parties by their names.

4

indicates that all Defendants are sued in their official and individual capacities. (FAC p. 3.) Plaintiff's allegations concern the state court's rulings in various civil actions concerning child custody and support and marital status as well as related actions of county employees and former spouse Defendant Lisa Dickson, who has been on AFDC or CalWorks since April 1999. (FAC p. 10 ¶ 20.) Plaintiff seeks injunctive and declaratory relief to effectuate the cessation of all actions against him, and "restitution" (FAC p. 17), which the Court understands as a prayer for damages. Plaintiff claims that his constitutional right to be with his children was violated.

Plaintiff purports to state claims for trespass and/or negligence, and he refers to 42 U.S.C. § 1981, 1983, and 1985. The Court at this juncture is screening the complaint for the presence of a federal claim or a basis for jurisdiction in this Court; the court does not address any state claims that would be subject to supplemental jurisdiction should a federal claim be stated.

II. <u>State as Defendant</u>

Plaintiff names the state of California as a Defendant but does not state any facts concerning the conduct of Defendant state of California.

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1  42 U.S.C. § 1983. To state a claim pursuant to § 1983, a

2  plaintiff must plead that defendants acted under color of state

3  law at the time the act complained of was committed and that the

4  defendants deprived the plaintiff of rights, privileges, or

5  immunities secured by the Constitution or laws of the United

6  States. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.

7  1986). The statute plainly requires that there be an actual

8  connection or link between the actions of the defendants and the

9  deprivation alleged to have been suffered by plaintiff. See

10 Monell v. Department of Social Services, 436 U.S. 658, (1978);

11 Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held

12 that "[a] person 'subjects' another to the deprivation of a

13 constitutional right, within the meaning of section 1983, if he

14 does an affirmative act, participates in another's affirmative

15 acts or omits to perform an act which he is legally required to

16 do that causes the deprivation of which complaint is made."

17 Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff

18 has not linked this Defendant to any conduct resulting in

19 deprivation of rights.

20     More fundamentally, a state is not a person for the purpose

21 of an action pursuant to § 1983; hence, a section 1983 claim

22 against a state is legally frivolous. Arizonans for Official

23 English v. Arizona, 520 U.S. 43, 69 (1997). Further, a state has

24 immunity pursuant to the Eleventh Amendment. Brooks v. Sulphur

25 Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).

26     The Court therefore concludes that Plaintiff's claim against

27 the state must be dismissed without leave to amend.

28     III. Suit against the Governor

1    Plaintiff sues the governor of California.

2    It is established that state officials sued in their

3 official capacity are not persons for purposes of § 1983 with

4 respect to claims for damages; rather, a suit against a state

5 official in his or her official capacity is a suit against the

6 official's office and, as such, is no different from a suit

7 against the state itself. Will v. Michigan Department of State

8 Police, 491 U.S. 58, 71 (1989).

9    Accordingly, to the extent that the suit is against the

10 governor in his official capacity for damages, the action should

11 be dismissed without leave to amend.

12    Further, although Plaintiff has already been given leave to

13 amend once, Plaintiff has failed to state any facts concerning

14 the conduct of the Defendant governor and has failed to link the

15 Defendant to any conduct resulting in any deprivation of

16 Plaintiff's rights. Thus, Plaintiff has failed to state a claim

17 against the governor in any capacity. It does not appear that

18 Plaintiff could state facts sufficient to state a claim against

19 the governor.

20    In summary, the claim against the governor in both his

21 official and individual capacities should be dismissed without

22 leave to amend.

23    IV. Judicial Immunity of Judges Named as Defendants

24    Plaintiff names various state judges as defendants, and he

25 complains of the rulings of various judges of the Superior Court

26 of Stanislaus County in various cases and their having signed

27 orders. (FAC 9.) Plaintiff not only alleges erroneous rulings,

28 but he also alleges constitutional deprivations, such as all the

7

judges named in the complaint having brought criminal contempt charges against Plaintiff and then denied him his right to jury trial, their having put him in jail, and their having failed to present court investigators whose reports were relied upon for cross-examination and instead having required Plaintiff to subpoena them. (FAC 9, 10.)

Judges and officers whose functions bear a close association to the judicial process are entitled to absolute judicial immunity from damage actions under 42 U.S.C. § 1983 for judicial acts taken within the jurisdiction of their courts. <u>Demoran v. Witt</u>, 781 F.2d 155, 156 (9th Cir. 1986). A judge loses judicial immunity for judicial acts only when the judge acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature. <u>Shucker v. Rockwood</u>, 846 F.2d 1202, 1204 (9th Cir. 1988). The factors relevant in determining whether an act is judicial "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-357, 362 (1978). Judicial immunity is not lost by allegations that a judge conspired with a third party. As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies. <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1078 (9th Cir. 1986).

The allegations of the complaint before the Court establish that the judges are entitled to absolute judicial immunity. Plaintiff is complaining of actions or rulings made by the judges in cases pending before the respective courts. The actions or

1  rulings made by the judges in connection with Plaintiff's cases

2  to which the judges were assigned were within their jurisdiction.

3      Accordingly, to the extent that Plaintiff seeks to sue the

4  judges who made the decisions of which Plaintiff complains,

5  Plaintiff's complaint should be dismissed without leave to amend

6  because of their absolute judicial immunity.

7      V. <u>Stanislaus County as a Defendant</u>

8      Plaintiff sues the County of Stanislaus.

9      Although a county is a person to whom § 1983 applies, local

10  governmental units may not be held responsible financially for

11  the acts of its employees under a respondeat superior theory of

12  liability. A county may be financially liable for its own actions

13  in the nature of policy or customs where an official policy or

14  custom results in a deprivation of federally protected rights.

15  <u>Thompson v. City of Los Angeles</u>, 885 F.2d 1439, 1443 (9th Cir.

16  1989); <u>Bd. of County Commissioners v. Brown</u>, 520 U.S. 397, 403

17  (1997). However, the requirement of a policy or custom does not

18  apply to suits for prospective declaratory or injunctive relief.

19  <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469,

20  1472 (9th Cir. 1993); <u>Chaloux v. Killeen</u>, 886 F.2d 247, 251 (9th

21  Cir. 1989) (holding that a suit against county official in his

22  official capacity was tantamount to a suit against the entity

23  itself, against which a claim for only prospective injunctive and

24  declaratory relief could be prosecuted without an allegation of a

25  deprivation of rights resulting from an official policy or custom

26  where the official was enforcing a state law).

27      Here, Plaintiff has not alleged any conduct of the Defendant

28  County concerning policy of customs pertinent to this case.

9

Plaintiff alleges vaguely that the county and state control the rules of civil procedure in California, the Vehicle Code, and the state bar; receive financial benefit from their attorney's actions and continue to collect child support actions pursuant to the allegedly fraudulent decree of dissolution; bring products, services, and licensees into the stream of commerce; and have unspecified training and testing programs, and certificates of competency for licensed drivers, all for the purpose of operation in the stream of commerce; and contract with attorneys Drabin and Cheryl K. McSparin to collect child support owed. (FAC pp. 7, 10 ¶ 20.)

However, these allegations do not amount to an allegation that a specific official custom or policy resulted in a deprivation of specific federally protected rights. Accordingly, Plaintiff has not stated a claim against the County for damages. Further, it does not appear possible that Plaintiff could allege such an official policy or custom.

Accordingly, Plaintiff's complaint should be dismissed without leave to amend to the extent that it prays for monetary relief against the county.

VI. <u>Color of Law and Conspiracy</u>

Some of the actors alleged to have wronged Plaintiff appear to have been private parties.

Plaintiff complains of the actions of Plaintiff's former wife, Lisa Constance Dickson, who is the mother of the children who are the subject of the underlying controversy between Plaintiff and Dickson. Plaintiff alleges by inference that she breached her duty not to act to injure Plaintiff; in addition,

1  she breached a 1992 agreement for joint legal custody. (FAC p.
2  8.) These claims appear to relate to state law claims.

3      Plaintiff also complains of the conduct of E. F. Cash
4  Dudley, who served as the attorney for Dickson in legal
5  proceedings in state court. Plaintiff complains that Dudley
6  tardily and incorrectly drafted orders in the state court
7  proceedings. (FAC p. 6.)

8      It is established that to state a claim under section 1983,
9  a plaintiff must plead that the defendant acted under color of
10 state law. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.
11 1986). Generally, private parties are not acting under color of
12 state law. See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir.
13 1991). However, "[a]ction taken by private individuals may be
14 'under color of state law' where there is 'significant' state
15 involvement in the action." Howerton v. Gabica, 708 F.2d 380, 382
16 (9th Cir. 1983).

17     It has been held that a person who resorts to a state's
18 statutory mechanism for attaching property before judgment and,
19 in so doing, acts jointly with a state official by submitting
20 factual material in order to obtain the attachment, is acting
21 under color of law. Lugar v.Edmondson Oil Co., Inc., 457 U.S.
22 922, 927-28 (1982). In Lugar, the court explained that the
23 deprivation must be caused by the exercise of some right or
24 privilege created by the state or by a rule of conduct imposed by
25 the state or a person for whom the state is responsible; and
26 further, the party charged with the deprivation must be a person
27 who may fairly be said to be a state actor because either he is a
28 state official, has acted together or has obtained significant

11

aid from state officials, or because his conduct is otherwise
chargeable to the state. Id. p. 937. These limitations prevent
private parties from facing constitutional litigation whenever
they seek to rely on a state rule that governs their interaction
with the community. Id. The mere operation of a statutory
enforcement scheme that is used or invoked by a private party is
generally not sufficient; rather, there must be something more
with respect to the otherwise private action, either performance
of a public function, state compulsion, nexus with the state,
joint action constituting wilful participation in joint activity
the state or its agents, or other facts. Id. pp. 938-39. In
Lugar, the additional action was the invocation of the aid of
state officials, by means of an ex parte application for pre-
judgment attachment, to take advantage of state-created
attachment procedures. The private party thereby wilfully
participated in joint activity with the state. See, Sutton v.
Providence St. Joseph Medical Center, 192 F.3d 826, 839 (9th Cir.
1999). However, this holding extended only to a claim challenging
the constitutionality of the entire statutory mechanism, and not
to a claim concerning private misuse of abuse of the statute; if
the allegation was only that the conduct was unlawful under state
law (i.e., that the law was improperly applied to the
Plaintiffs), then it could not be relied upon to demonstrate that
the injury resulted from the exercise of a right or privilege
having its source in state authority because it could not be said
that the private parties were acting pursuant to relevant state
policy. Lugar v. Edmondson Oil Co., 457 U.S. at 940-42. However,
a claim that the state-created procedure itself was procedurally

defective under the Fourteenth Amendment did demonstrate action under color of law because it referred to the entire mechanism sanctioned by the state and thus could be considered to be action undertaken pursuant to relevant state policy and thus attributable to the state. Id. pp. 940-41.

A conspiracy between a private party and a state official to deprive others of constitutional rights may result in action by a private party under color of state law, but to prove a conspiracy between the state and private parties under section 1983, the Plaintiff must allege an agreement or meeting of the minds to violate constitutional rights; each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc). The defendants must by some concerted action have intended to accomplish some unlawful objective for the purpose of harming another which results in damage. Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

Here, with respect to Defendant Dickson, the allegation that she fraudulently obtained a divorce (FAC p. 6) amounts to nothing more than an allegation that she misused the state law and procedure governing dissolution of marriage; it does not indicate that Dickson was simply using some right or privilege created by the state or rule of conduct imposed by the state or a person for whom the state was responsible. Likewise, the allegations that there was a petition "from Defendant-A and K" (Dickson and her attorney, Dudley) to terminate parental rights (FAC 6) does not

13

indicate that Plaintiff voluntarily engaged in conduct with governmental officials or did anything more than proceed pursuant to a state-created procedure.

The vague allegations of state licensing and management of various agencies, including Child Protective Services (FAC 7), does not render Dickson's conduct that attributable to the state.

Further, there is no sufficient allegation of any facts concerning any conspiracy or other significant involvement on the part of any state actor in the conduct of these purely private parties. Plaintiff alleges generally that the Defendants are the agents of each other and performed all acts within the course and scope of the agency, but Plaintiff has not alleged facts concerning an agreement.

Plaintiff alleged that Defendant Dickson was in a conspiracy with Ray Harder, a child abduction officer, and other unspecified state and county employees. (FAC 6, 7.) Plaintiff alleged that Defendant Harder was "anonymously in a conspiracy with Defendant-A, for not re-uniting with their parents according to his job description and his oath of office." (Id.)

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy

1  need not know the exact details of the plan, but each participant
2  must at least share the common objective of the conspiracy.'"
3  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d
4  at 1541).

5      Plaintiff's allegations concerning a conspiracy among
6  Defendant Dickson, Dudley, and Harder (FAC p. 6) are not specific
7  but rather refer only generally to a conspiracy.

8      The federal system is one of notice pleading, and the court
9  may not apply a heightened pleading standard to plaintiff's
10  allegations of conspiracy. Empress LLC v. City and County of San
11  Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v.
12  County of Santa Clara, 307 F.3d 1119, 1126 (2002). However,
13  although accepted as true, the "[f]actual allegations must be
14  [sufficient] to raise a right to relief above the speculative
15  level ...." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965
16  (2007) (citations omitted). A plaintiff must set forth "the
17  grounds of his entitlement to relief[,]" which "requires more
18  than labels and conclusions, and a formulaic recitation of the
19  elements of a cause of action ...." Id. at 1964-65 (internal
20  quotations and citations omitted). As such, a bare allegation
21  that defendants conspired to violate plaintiff's constitutional
22  rights will not suffice to give rise to a conspiracy claim under
23  section 1983.

24      The allegation concerning Harder and Dickson is difficult
25  to comprehend because of the vague reference to his job
26  description and the illogical statement of anonymous involvement
27  in a conspiracy, which requires a meeting of the minds. The Court
28  concludes that Plaintiff has not alleged facts that permit more

than speculation. The facts alleged are not sufficient to state a claim for conspiracy involving Defendant Dickson.

Plaintiff alleges that Dickson failed to appear in hearings that apparently concerned the action for dissolution of marriage or setting it aside. (FAC 8.) It is alleged that Defendants Drabin and McSparin acted in her stead and represented her in the matter of child custody and dissolution. It is further alleged that these attorneys became her attorney in a full-fledged attorney-client relationship, which was illegal under state law, and they obstructed justice by helping Dickson and Dudley terminate Plaintiff's parental rights. These allegations do not establish a procedure provided by the state, but rather a misuse of the state's procedure, and thus it cannot be inferred that the action was taken under color of state law. Further, it is not alleged that this was done pursuant to a conspiratorial agreement. The same may be said with respect to attorney Drabin's later efforts to collect child support, which were allegedly illegal because undertaken pursuant to a void judgment. (FAC 9.)

Plaintiff alleges that the state, the county, Drabin, and Judge Silveira conspired to deny Plaintiff a jury trial, apparently with respect to a contempt proceeding. (FAC 10.) Again, these allegations are too general and devoid of facts to state a claim for conspiracy or to provide the basis for a finding of some joint action.

Further, with respect to attorney Dudley's actions, it does not appear that there are allegations sufficient to render the actions of Dudley those taken under color of state law.

Therefore, the Court concludes that a claim pursuant to §

1983 against Dickson and Dudley has not been stated, and the

action against them should be dismissed.

VII. <u>Lack of Linkage of Defendant</u>s

Plaintiff names Stanislaus County District Attorney James C.

Brazelton (FAC 2); Regal Wilson, the chief executive officer of

the county (FAC 2); and a few individuals referred to only as

employees of District I, including Thomas Mayfield, Pat Paul,

Nick W. Blom, Ray Simon, and Paul W. Causo, who are not alleged

to have engaged in any other conduct other than being the

"responsible parties that represent County as employers of

Defendant [Drabin, McSparin], and others in the County who are

named as Defendants in this suit." (FAC 2, 11.) He states that

the were either holders of state licenses (licensed attorneys),

state court judges, or officers of the Defendant County who were

in a master-slave relationship. (FAC 8.)

Further, Plaintiff alleges that attorneys Drabin and

McSparin contracted with the county and state to collect child

support pursuant to the judgment or judgments that Plaintiff

claims are void. (FAC p. 10 ¶ 21.) Attorney Drabin learned in the

course of his representation that Defendant Dickson had concealed

the children and had allowed casual acquaintances to babysit them

for a number of years; further, he knew that Defendant Dickson

had expended thousands of dollars in attorney's fees for

Defendant Dudley's services in representing her but had not

disclosed this money to the state or county. However, Drabin did

not inform child protective services. (FAC pp. 6-7.)

The Civil Rights Act under which this action was filed

provides:

17

> Every person who, under color of [state law]...
> subjects, or causes to be subjected, any citizen of the
> United States... to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution... shall be liable to the party injured in
> an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983. To state a claim pursuant to § 1983, a plaintiff must plead that defendants acted under color of state law at the time the act complained of was committed and that the defendants deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In order for a person acting under color of state law to be liable under § 1983, the person must be shown to have personally participated in the alleged deprivation of rights; there is no respondeat superior liability. Bell v. Clackamas County, 341 F.3d 858, 867 (9th Cir. 2003).

Plaintiff has failed to allege any facts that would render the district attorney liable as a defendant.

1    With respect to the named county or state employees, whose

2    status is unclear, and the named county executive officer,

3    Plaintiff alleges only their status as responsible parties that

4    represent the county as employers of the other Defendants.

5    Plaintiff has failed to allege any facts with respect to their

6    conduct of their office, or with respect to their authority, that

7    would render them liable as defendants under § 1983. There is no

8    allegation that the executive officer or the others participated

9    in any deprivation of rights.

10    Accordingly, Plaintiff's claim against the county district

11    attorney Brazelton, executive officer Regal Wilson, and the named

12    county employees Defendants Thomas Mayfield, Pat Paul, Nick W.

13    Blom, Ray Simon, and Paul W. Caruso should be dismissed.

14    Further, with respect to the attorneys Drabin and McSparin,

15    there is no allegation that any conduct on the part of these

16    Defendants resulted in any deprivation of Plaintiff's rights;

17    rather, the only specific allegation is that Drabin failed to

18    give information to Child Protective Services (FAC 6-7); they

19    represented Defendant Dickson and thereby helped terminate

20    parental rights (FAC 8); and they collected or enforced

21    previously existing orders for child support pursuant to a void

22    judgment. (FAC 10). It does not appear that any harm could have

23    been suffered except with respect to the collection of child

24    support and termination of parental rights.

25    The Court further notes that attorney Dudley is alleged to

26    have prepared court orders tardily and erroneously, which

27    resulted in a lingering cloud of suspicion and false accusations

28    hanging over Plaintiff's head. (FAC 6, 9.) However, it is not

shown that any violation of federally protected rights was effected by this conduct. Thus, Plaintiff has not stated a claim for a violation of § 1983 with respect to Defendant Dudley.

VIII. Immunity for Court Investigating Officers

Plaintiff alleges that Defendant Harder was a child abduction officer who failed to do anything to try to reunite Plaintiff and his children when informed that Defendant Dickson was concealing the children; he also withheld the location of the minors from Plaintiff during an unspecified time, probably in the early 1990's. (FAC 4-5.) This was alleged to have been assistance provided to Defendant Dickson and a failure to provide Plaintiff the assistance he desired. (FAC p. 6, ll. 1-4.) Plaintiff alleges that Harder was in a conspiracy with Defendant Dickson because he did not re-unite his children with his parents "according to [Harder's] job description and his oath of office." (FAC p. 7, ll. 8-10.)

Plaintiff alleges that Defendant Ron Wood was the investigating officer for the state court whose report was used to "end Plaintiff's duties as a Father to his heirs of his bloodline." (FAC p. 5, l. 8-10.) However, Plaintiff also stated that Defendants Dickson and Dudley lost this case or proceeding, or lost an order to show cause at least, after being unable to prove their accusations. (FAC p. 5, l. 9-17.)

In a subsequent case or proceeding to re-establish his parental rights, Defendant Wood and Defendant Bruce Kirby (apparently another officer of the court) were ordered to investigate allegations of criminal activity at Plaintiff's request, but they turned into a background check of both parties.

20

(FAC p. 5, ll. 12-15.) Defendant Wood then took his report from the earlier case, in which allegations of Plaintiff's molestation and abuse were allegedly disproved, and used it to cause the court to put unspecified "impossible orders/requirements" on Plaintiff, who was unable to perform them, and "thus his parental rights have technically been terminated." (FAC p. 5, ll. 15-18.)

It is established that child services workers with responsibility for initiating dependency proceedings are social workers who are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings. Meyers v. Contra Costa County Dept. of Social Services, 812 F.2d 1154, 1157 (9th Cir. 1987). Further, counselors of a family conciliation court whose duties were to mediate custody and visitation disputes, investigate matters pertaining to such disputes, and provide reports to the courts were held entitled to quasi-judicial immunity for their actions within the scope of their duties concerning a pending case to which they were assigned because they were performing a judicial function at the direction of a court. Id. at 1159. This is consistent with other cases. See, e.g., Demoran v. Witt, 781 F.2d 155, 157-58 (9th Cir. 1985) (holding that probation officers are entitled to complete quasi-judicial immunity for their actions in writing a pre-sentence report pursuant to, and within the scope of, a statutory duty to do so because they are performing a function integral to the independent judicial process, engaging in impartial fact-gathering and reporting the results); Miller v. Gammie, 335 F.3d 889, 898-99 (9th Cir. 2003) (holding that a social worker and

therapist from the Nevada Division of Child and Family Services could be immune with respect to conduct concerning the decision to institute proceedings to make a child a ward of the state because it was functionally similar to the prosecutor's decision to institute proceedings); Mabe v. San Bernardino County, Dept. of Public Social Services, 237 F.3d 1101, (9th Cir. 2001) (holding that with respect to social workers' investigation of a dependency matter and submission of allegedly false evidence during juvenile court proceedings, the workers were absolutely immune); Doe v. Lebbos, 348 F.3d 820, 825-26 (9th Cir. 2003) (holding that a social worker who allegedly inadequately investigated allegations of abuse and neglect in connection with dependency court was entitled to absolute quasi-judicial immunity for her investigation and presentation of allegedly fabricated evidence in petitions prepared for the court because in doing so she was engaging in conduct constituting initiation and pursuit of child dependency proceedings; thus, the actions had the requisite connection to the judicial process in order to be protected by absolute immunity); Beltran v. Santa Clara County, 491 F.3d 1097, 1100-03 (9th Cir. 2007) (holding that the submission and swearing of facts and the signing of dependency and custody petitions by a county social worker was absolutely immune from suit because it was necessary to the judicial process and thus functionally analogous to the common law functions of judges, grand jurors, prosecutors, and witnesses testifying in court by presenting information to the court that any competent, non-official witness could not provide); see also, Santos v. County of Los Angeles Department of Children and Family Services,

22

299 F.Supp.2d 1070, 1079 (C.D.Cal. 2004) (holding that social workers were entitled to absolute quasi-judicial immunity from a suit by a child's aunt for the social workers' role in initiating and pursuing the adoption of a child by the child's grandparents because the functions were critical to the judicial process itself such as initiation and pursuit of dependency proceedings).

Here, the court officers were apparently acting pursuant to court direction in the course of a pending proceeding concerning the custody of the children; this apparently took place either in the course of a court-ordered review of custody status in a proceeding for dissolution, in a proceeding to terminate parental rights, or to obtain child support. It appears that the only functions of the social workers was to obtain facts and to report them to the court, whether by way or report or testimony.

The Court concludes on the authority of Miller and Demoran that the social workers are entitled to complete quasi-judicial immunity for their conduct in reviewing the matter and reporting to the court within the scope of their duties as court officers.

Accordingly, the Court concludes that Plaintiff has failed to state a claim against officers Harder and Wood.

IX. Jurisdiction to Review State Court Proceedings

Plaintiff seeks damages as well as declaratory relief and an injunction stopping all actions against the Plaintiff.

Plaintiff complains of various rulings made in state court civil actions and of positions taken by and conduct of various participants and witnesses involved in the state court actions. The actions include 1) a proceeding in 1992 whereby Plaintiff and Defendant Dickson legally separated (action number 278746); 2) a

23

proceeding for dissolution of the marriage of Plaintiff and

Defendant Dickson (action number 147021), in which Plaintiff

alleges Defendant Dickson obtained a decree with custody of the

children in 1997 by fraud (i.e., notice was given of the

proceeding solely by publication by Defendant Dickson, who

allegedly knew Plaintiff's telephone number and/or whereabouts)

after concealing the children for years, and in which Plaintiff

attempted to set aside the divorce decree that Plaintiff alleges

legally should have been set aside once he appeared in court (FAC

2, 6, 8); 3) a suit to declare the minors free from Plaintiff's

parental custody (action number 172781) due to allegedly

erroneous allegations of abandonment, molestation, and abuse,

with respect to which Plaintiff alleges Defendant Dickson lost an

order to show cause, which involved an attempt to obtain child

support or a motion proceeding in which child support papers

could be served, and which resulted in the termination of

Plaintiff's custody and control over the minor children (FAC 5,

6, 8, 9); and 4) a suit or motion by Plaintiff to reestablish

parental rights or to set aside the void dissolution decree (FAC

6 ).

Plaintiff alleges that Defendant Dickson fraudulently

obtained a decree of divorce; the Defendants who were judges or

court officers either enforced these orders or engaged in conduct

that produced reports that were considered by the court in the

various proceedings which ultimately resulted in the termination

of Plaintiff's marriage and his parental relationships.

Further, Plaintiff alleges misconduct of various persons in

connection with such proceedings, including his former wife, Lisa

Constable, who allegedly concealed the children and thus obviated
any duty of Plaintiff to pay child support, offered unspecified
false and misleading statements in the case, prevented Plaintiff
from being properly served and thus being present in court to
object to proceedings, and obtained a fraudulent decree of
dissolution; attorney Edith Cash Dudley, who represented
Defendant Dickson in the proceedings and allegedly used
unspecified baseless and unproved molestation accusations at
hearings and erroneously drafted post-hearing findings and orders
upon the trial court's direction (FAC 6, 9); the state and
county's attorney, Drabin, who allegedly knew that Defendant
Dickson had paid funds out to attorneys in payment of attorney's
fees but had not informed child support of those funds, who
further heard testimony of Defendant Dickson that casual
acquaintances had babysat the children from 1992 to 1997 but who
did not perform a duty to inform child protective services of
this information, and who in combination with the state, the
county, and attorney Cheryl K. McSparin (whose precise capacity
and identity are not specified), collected child support and
aided and abetted Dickson and Dudley in terminating Plaintiff's
parental rights after it was shown in court that there was no
reason to terminate parental rights, and filed a petition to have
the minor children declared free from the father's parental
custody and control. (FAC 7-8.)

Plaintiff expressly states that the subject of the present
action is the minor children. (FAC p. 6, l. 22.)

It is established that a federal court lacks subject matter
jurisdiction to review final determinations of state courts, as

well as claims "inextricably intertwined" with final state court decisions, even if such "inextricably intertwined" claims were not actually raised in the state court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-87, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Olson Farms, Inc. v. Barbosa, 134 F.3d 933, 937 (9th Cir. 1998) (holding the "Rooker-Feldman" doctrine is jurisdictional). A federal district court is a court of original jurisdiction, and as such has no authority to review the final determinations of a state court in judicial proceedings. Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir. 1986); Dubinka v. Judges of Superior Court of State of Cal. for County of Los Angeles, 23 F.3d 218, 221 (9th Cir. 1994). "[A] losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994).

Further, the federal courts lack jurisdiction to hear suits and issue decrees regarding divorce, alimony, and child custody. Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).

Here, Plaintiff is in effect asking this Court to redetermine his marital status and the state court's determination with respect to child custody. Plaintiff seeks to undo the actions of the various actors and entities because Plaintiff seeks injunctive relief with respect to these actions. Plaintiff's claims regarding these civil proceedings are essentially an invitation to this Court to review the

1   determinations of a state court which appear to have been made

2   over five years ago and which appear to be final.

3       Accordingly, Plaintiff's claims regarding the state court

4   rulings and the inextricably intertwined conduct of the attorneys

5   and entities involved in the case should be dismissed because

6   Plaintiff has not stated a basis for this Court's jurisdiction

7   and has not stated facts demonstrating subject matter

8   jurisdiction in this Court.

9       X. <u>Malicious Prosecution</u>

10      The FAC also addresses a criminal proceeding or proceedings,

11  concerning criminal contempt and/or possibly failure to support

12  his minor children, in which Plaintiff was not able to face his

13  accusers, and Plaintiff was jailed as a result. (FAC p. 10.) To

14  the extent that Plaintiff is attempting to state a claim for

15  malicious prosecution, the Court notes the established legal

16  principles pertinent to such a claim:

17          "In order to prevail on a § 1983 claim of
        malicious prosecution, a plaintiff 'must show that the
18      defendants prosecuted [him] with malice and without
        probable cause, and that they did so for the purpose of
19      denying [him] equal protection or another specific
        constitutional right.'" <u>Awabdy v. City of Adelanto</u>, 368
20      F.3d 1062, 1066 (9th Cir. 2004) (citing to <u>Freeman v.
        City of Santa Ana</u>, 68 F.3d 1180, 1189 (9th Cir. 1995)).
21      "Malicious prosecution actions are not limited to suits
        against prosecutors but may be brought . . . against
22      other persons who have wrongfully caused the charges to
        be filed." <u>Id.</u> "An individual seeking to bring a
23      malicious prosecution claim must generally establish
        that the prior proceedings terminated in such a manner
24      as to indicate his innocence." <u>Id</u>. at 1068.

25      Here, Plaintiff alleges that he was jailed; it appears that

26  Plaintiff suffered a criminal conviction, and Plaintiff has not

27  alleged that the criminal proceeding or proceedings complained of

28  terminated in a manner as to indicate his innocence. Accordingly,

27

to the extent that Plaintiff is attempting to state a claim for malicious prosecution, Plaintiff's claim for malicious prosecution must be dismissed.

XI. <u>Challenge to Criminal Proceedings or Conviction</u>

The allegations of the complaint are ambiguous and uncertain, but it appears that the complaint concerns allegations of a wrongful conviction that resulted in Plaintiff's incarceration.

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. <u>Preiser v. Rodriquez</u>, 411 U.S. 475 (1973); <u>Young v. Kenny</u>, 907 F.2d 874 (9th Cir. 1990), <u>cert.</u> <u>denied</u> 11 S.Ct. 1090 (1991). Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." <u>Heck v. Humphrey</u>, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." <u>Id</u>. at 488. Under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), a § 1983 action that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable and does not, therefore, accrue until and unless the plaintiff can prove that his conviction or sentence has been reversed on direct appeal. The <u>Heck</u> principle applies to claims

1 that would necessarily imply the invalidity of any conviction
2 that might have resulted form the prosecution of the dismissed
3 charge, including pending charges in addition to actual
4 convictions. Harvey v. Waldron, 210 F.3d 1008, 1013-14 (9th Cir.
5 2000). It applies generally to charges of unlawful or false
6 arrest. Cabrera v. City of Huntington Park, 159 F.3d 374, 380
7 (9th Cir. 1998); Harvey v. Waldron, 210 F.3d at 1014-15.

8    Again, Plaintiff has not alleged that his apparent
9 conviction has been invalidated. Accordingly, Plaintiff's claim
10 or claims concerning his conviction should be dismissed.

11    XII. Section 1985

12    Plaintiff mentions § 1985. (FAC p. 1.)

13    The first part of 42 U.S.C. § 1985 covers the conspiratorial
14 prevention of an officer from performing his duties. § 1985(1).
15 This does not appear to be the basis of Plaintiff's claim.

16    Section 1985 also covers conspiratorial deterrence of
17 witnesses by force, intimidation, or threat, and the obstruction
18 of justice with intent to deny any citizen the equal protection
19 of the laws. § 1985(2). Section 1985(3) provides for a claim for
20 damages for a conspiracy to deprive another of equal protection
21 of the laws.

22    A claim under § 1985(2) requires either a conspiracy among
23 two or more persons to injure a party or witness in his person or
24 property because of attending federal court or testifying in any
25 manner pending in federal court, and injury or damages to the
26 claimant; or, with respect to state justice, a conspiracy with
27 respect to obstruct justice in a state with the intent to deny to
28 any citizen the equal protection of the laws. Portman v. County

of Santa Clara, 995 F.2d 898, 909 (9ᵗʰ Cir. 1993). Further, with respect to protection against obstruction of state justice, it is established that the "equal protection" language requires an allegation of animus that is based on membership in a protected class. Id.

A required element for a violation of § 1985(3) is a conspiracy. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1140 (9th Cir.2000) The United States Supreme Court has held that in a § 1985(3) action, a claimant must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Accordingly, the Ninth Circuit has held that " § 1985(3) extends 'beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights.'" Orin v. Barclay, 272 F.3d 1207, 1217 n. 4 (9th Cir.2001).

Plaintiff's complaint, construed liberally, does not allege facts showing a conspiracy or any class-based or invidiously discriminatory animus. The Court concludes that Plaintiff fails to state a claim under § 1985, and it does not appear that Plaintiff could allege facts that would constitute a claim under this section.

XIII. Section 1981

Section 1981 provides that all persons within the jurisdiction of the United States shall have the same right to

30

engage in various activities (make and enforce contracts, sue, etc.) as is enjoyed by white citizens, and such rights shall be protected against impairment by non-governmental discrimination and impairment under color of state law. The elements are membership in a protected class (racial minority), an intent to discriminate on the basis of race, and discrimination that concerned one or more of the activities enumerated in the statute. <u>Mian v. Donaldson, Lufkin & Jenrette Securities Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993); <u>Lindsey v. SLT Los Angeles, LLC</u>, 447 F.3d 1138, 1145 (9th Cir. 2006) (in a case of employment discrimination under § 1981, the elements include membership in a protected class, attempt to contract for services, and denial of right to contract for those services).

Here, Plaintiff has not alleged the requisite membership in a protected class or racial animus. Accordingly, Plaintiff has failed to state a claim pursuant to § 1985. Further, it does not appear possible that Plaintiff could state facts sufficient to state a claim.

Accordingly, Plaintiff's claims pursuant to §§ 1985 and 1981 should be dismissed without leave to amend.

XIV. <u>Recommendation</u>

In summary, all Plaintiff's claims against all Defendants should be dismissed because Plaintiff has failed to state a cognizable claim against the defendants and has failed to plead facts demonstrating jurisdiction in this Court.

Accordingly, it IS RECOMMENDED that the complaint BE DISMISSED in its entirety.

Further, Plaintiff has already had one opportunity to file

31

an amended complaint after being informed of the defects in his original complaint. However, despite Plaintiff's having been given leave to state facts anew, Plaintiff has failed to state a claim against Defendants. In view of Plaintiff's having repeatedly alleged essentially the same facts without stating a claim or a basis for jurisdiction in this Court, it is concluded that it is obvious that Plaintiff cannot prevail on the facts that he has alleged and that an opportunity to amend would be futile.

Accordingly, it IS RECOMMENDED that the dismissal of Plaintiff's complaint be WITHOUT LEAVE TO AMEND.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Plaintiff is admonished not to attempt to file an amended

32

complaint as Plaintiff's recourse is to object to these findings and recommendations. Plaintiff is further admonished that this Court will strike any amended complaint filed without the Court's specific grant of permission to file an amended complaint.

IT IS SO ORDERED.

**Dated:    December 12, 2007              /s/ Sandra M. Snyder**
                                 UNITED STATES MAGISTRATE JUDGE